UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GRANT F. SMITH, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 15-cv-224 (TSC) |
| CENTRAL INTELLIGENCE AGENCY, | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

Plaintiff Grant F. Smith, proceeding *pro se*, seeks records related to alleged uranium diversion from the Nuclear Materials and Equipment Corporation ("NUMEC") to Israel. He challenges the CIA's response to his Freedom of Information Act ("FOIA") request. The CIA moved for summary judgment, and Smith then moved to amend his Complaint to add the Department of Justice as a Defendant. For the reasons set forth below, Defendant's motion for summary judgment will be GRANTED and Plaintiff's motion to amend the Complaint will be DENIED.

**I.   BACKGROUND**

Plaintiff is a public interest researcher and founder of the Institute for Research: Middle Eastern Policy, Inc. (Compl. ¶ 4). On May 13, 2010, he submitted a FOIA request to the CIA for "declassification and release of all cross referenced CIA files related to uranium diversion from the Nuclear Materials and Equipment Corporation (NUMEC) to Israel." (*Id.* ¶ 16; Ex. 6). The CIA confirmed receipt of Plaintiff's request on September 10, 2010, informing him that the CIA Information Act ("the Act"), 50 U.S.C. § 431, exempts CIA operational files from search, review, publication, and disclosure requirements of FOIA. (Compl. ¶ 17; Ex. 7). The CIA issued a final

1

response on August 28, 2013, informing Plaintiff that it had located responsive material but was withholding it in full pursuant to FOIA exemptions 1 and 3. (Compl. ¶ 18; Ex. 8). The CIA released to Plaintiff four documents, totaling eleven pages, that were part of database of previously released information and that it believed were responsive to Plaintiff's request. (Ex. 8). Plaintiff filed an administrative appeal of the CIA's withholding, which the CIA's Agency Release Panel denied on March 28, 2014. (Compl. ¶ 20; Wilson Decl. ¶ 21). Plaintiff then filed suit in this court. Several months later, after the Interagency Security Classification Appeals Panel ("ISCAP") overturned a number of CIA classification determinations, the CIA conducted a supplemental classification review and search, and—after consulting with the FBI, State Department, and Department of Energy—released sixteen redacted documents, and withheld one document, on the basis of FOIA exemptions 1, 3, 6, 7(C), and 7(E). (Wilson Decl. ¶ 28-29; Hardy Decl. ¶ 4; Hackett Decl. ¶ 14; Stein Decl. ¶ 8).

## II.    LEGAL STANDARD

Summary judgment is appropriate where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia,* 298 F.3d 989, 991 (D.C. Cir. 2002). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (citation omitted). The district court conducts a *de novo* review of the government's decision to withhold requested documents under any of FOIA's specific statutory exemptions. *See* 5 U.S.C. § 552(a)(4)(B). The burden is on the government agency to show that nondisclosed, requested material falls within a stated exemption. *See Petroleum Info. Corp. v. U.S. Dep't of Interior,* 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)). In cases involving the applicability of exemptions and the adequacy of an agency's search, summary judgment may be

2

based solely on information provided in the agency's supporting declarations. *See, e.g.*, *ACLU v. U.S. Dep't of Def.,* 628 F.3d 612, 619 (D.C. Cir. 2011); *Students Against Genocide v. Dep't of State,* 257 F.3d 828, 838 (D.C. Cir. 2001). In *ACLU*, the D.C. Circuit wrote:

> If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone.

*ACLU,* 628 F.3d at 619. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* (quoting *Larson v. Dep't of State,* 565 F.3d 857, 862 (D.C. Cir. 2009)) (internal quotation marks omitted). However, a motion for summary judgment should be granted in favor of the FOIA requester where "an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." *Coldiron v. U.S. Dep't of Justice*, 310 F. Supp. 2d 44, 48 (D.D.C. 2004) (internal quotation marks omitted) (quoting *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992)).

### III. ANALYSIS

#### A. Summary Judgment

##### i. Adequacy of CIA's search

The court finds that the CIA conducted an adequate search. It determined that the Directorate of Intelligence ("DI"), Directorate of the CIA ("DIR") Area, and National Clandestine Service ("NCS") were reasonably likely to possess records responsive to Plaintiff's request.[1]

---

[1] At the time of Plaintiff's request, all CIA components were contained within the following five directorates: the National Clandestine Service, the Directorate of Intelligence, the Directorate of Science & Technology, the Directorate of Support, and the Directorate of the CIA Area. (Wilson Decl. ¶ 7). NCS and DI have since been renamed the Directorate of Operations and Directorate of Support, respectively, and a new Directorate has been created, but the CIA's filings and the court's opinion refer to the names applicable at the time of the request and its processing. (*Id.* at 8; Mot. for Summ. J. at 6 n.1).

(Wilson Decl. ¶ 23). Each division conducted a search of its record system. The DI used search terms including "NUMEC," "Nuclear Materials and Equipment Corporation," "Israel," and "uranium diversion" to search three electronic databases: (1) a database of "documents which have been scanned into various case types (FOIA, Privacy Act, Executive Order Mandatory Declassification Review, etc.)," which includes "all documents types, from disseminated intelligence to analysis, to Director-level correspondence;" (2) a web-based research, analysis, and collaboration database containing published DI work and NCS intelligence cables; and (3) a database of automated inventory of records retired to the Agency Archives and Records Center. (*Id.* ¶ 24). The DIR Area conducted a search using similar search terms of two electronic databases: one that "serves as the official action tracking system for the Director of the Central Intelligence Agency," and is used to "record and disseminate all external taskings [sic] received by the agency," as well a database of its records sent to the Agency Archives and Records Center. (*Id.* ¶ 25). The NCS conducted a search using similar terms in the database that contains "documents which have been scanned into various case types." (*Id.* ¶ 26). NCS determined that any other responsive records would be located in operational files, and it did not search those files. The searches resulted in a total of twenty-one documents, which the CIA reviewed, releasing four and withholding seventeen. (*Id.* ¶ 27).

Plaintiff challenges the adequacy of the CIA's search based on its decision not to search its operational files.[2] The CIA Information Act, 50 U.S.C. § 3141, exempts certain CIA operational

---

[2] Plaintiff also argues that the CIA should have used additional search terms in searching its non-exempt files, including "Zalman Shapiro," "Rafi Eitan," and "Dimona." (P. Resp. to Def. Statement of Mat. Facts, ECF No. 18-2 at 3-4). But a FOIA requester must "reasonably describe[]" the records sought, 5 U.S.C. § 552(a)(3)(A), and the request must "enable[] a professional employee of the agency who [i]s familiar with the subject area of the request to locate the record with a reasonable amount of effort." *Truitt v. Dep't of State*, 897 F.2d 540, 548 n.36 (D.C. Cir. 1990). If Plaintiff specifically wanted records containing those additional search terms, it was Plaintiff's

4

files from FOIA's search and disclosure requirements.  50 U.S.C. § 3141(a).  The Act's definitions of "operational files" includes "files of the National Clandestine Service which document the conduct of foreign intelligence or counterintelligence operations or intelligence or security liaison arrangements or information exchanges with foreign governments or their intelligence or security services." *Id*. § 3141(b).  If a requester challenges the CIA's invocation of the Act and decision not to search operational files, the CIA can meet its burden under FOIA "by demonstrating to the court by sworn written submission that exempted operational files likely to contain responsive records currently perform the functions set forth" in subsection (b). *Id.* § 3141(f)(4)(A).

The CIA's declaration states that the operational files likely to contain records responsive to Plaintiff's request involve functions including "documenting the conduct of foreign intelligence operations."  (Wilson Decl. ¶ 35).  The agency's decision not to search those files is therefore clearly within the CIA Information Act's exemption of operational files as defined in the Act.  However, the Act does not apply in three circumstances: (1) when a requester seeks information on themselves pursuant to FOIA or the Privacy Act, (2) when a requester seeks information concerning "any special activity the existence of which is not exempt from disclosure under" FOIA, and (3) when a requester seeks information concerning "the specific subject matter of an investigation by the congressional intelligence committees, the Intelligence Oversight Board, the Department of Justice ("DOJ"), the Office of General Counsel of the Central Intelligence Agency, the Office of Inspector General of the Central Intelligence Agency, or the Office of the Director of National Intelligence for any impropriety, or violation of law, Executive order, or Presidential directive, in the conduct of an intelligence activity."  50 U.S.C. § 3141(c).

---

responsibility to list them in his request.  The fact that he did not does not render the search inadequate.

The DC Circuit has held that in order to meet the third exception, "three questions must be answered in the affirmative." *Morley v. C.I.A.*, 508 F.3d 1108, 1116 (D.C. Cir. 2007). First, whether the statute covers the investigating entity; second, whether the information requested is "the specific subject matter of [the] investigation," and third, whether the investigation concerns "impropriety" or "misconduct" by intelligence agencies. *Id.* at 1116-18. The First Circuit has further held that "a congressional investigation that touches on CIA conduct in a particular incident or region, standing alone, is not sufficient to warrant the release of all CIA documents anent that incident or region;" rather, "the congressional investigation and the documents sought must specifically relate to CIA wrongdoing." *Sullivan v. C.I.A.*, 992 F.2d 1249, 1254-55 (1st Cir. 1993). Plaintiff contends that the information he seeks is exempt under section 3141(c) because it relates to investigations conducted by the United States Department of Justice, the General Accounting Office, and the President's National Security Advisor. (Opposition at 10).

Plaintiff has submitted a Department of Justice memorandum, dated April 22, 1976, setting forth the Attorney General's views on "whether the jurisdiction of the Joint Atomic Energy Committee is exclusive" and "whether the statute of limitations has run on any possible criminal offenses arising out of the discrepancy in nuclear materials at the Nuclear Materials and Equipment Company (NUMEC)." (P. Notice, ECF No. 14-1 Ex. 16). The memorandum mentions an FBI investigation into a possible violation of the Foreign Agents Registration Act by NUMEC's president, but indicates the FBI did not investigate the "alleged discrepancy in nuclear materials at NUMEC" because the Atomic Energy Commission advised the FBI that "any loss likely was attributable to inadequate accounting procedures." (*Id.*). It describes a number of criminal statutes that may have been implicated, including "violation of Atomic Energy Act," "disclosure of restricted data," "transportation of dangerous articles," "espionage," "accessory after the fact," "misprision of felony," and conspiracy. (*Id.*). The memorandum opines that "it is necessary to

6

conduct an investigation" into "whether any dismissal or other disciplinary proceedings may be appropriate with respect to any persons presently employed as federal officials who may have participated in or concealed any offense." (*Id.*).

The court does not find that the 1976 DOJ memorandum suggests the existence of a DOJ investigation meeting the second and third criteria from *Morley*. The memorandum contains no references to the CIA or to any impropriety by the CIA in its conduct of intelligence activity, nor does it contain any statements from which the court could infer an investigation into any such impropriety. A December 7, 1978 memorandum from DOJ legal counsel to the FBI Director, also submitted by Plaintiff, explains that the Department of Justice investigation was "attempting to determine if there is any individual agency in the Government which knew about a possible violation of the Atomic Energy Act and did nothing about it." (P. Notice, ECF No. 14 Ex. 18). Without some indication that the Department of Justice investigation specifically included or targeted the CIA, the court cannot conclude that the investigation meets the subsection (3) exception to the Act's exemptions. Plaintiff argues that the materials he submitted "d[o] not rule out that the DOJ was investigating CIA for improprieties in this particular instance," (Opposition at 15), but that is not enough. The text of section 1341 does not direct a court to except from exemption files that "may" pertain to an investigation, or to find the criteria for exception met because the court cannot "rule out" that the agency was subject to investigation.

Plaintiff also points to a memorandum by then-National Security Advisor Zbigniew Brzezinski to the President on August 2, 1977, in which Brzezinski stated, "[s]o far as we know however (and we have made serious effort to discover it) there is nothing to indicate active CIA participation in the alleged [uranium] theft." (Compl. Ex. 15). The memorandum also explains that the FBI investigated the situation beginning in 1965, concluded that the head of NUMEC "did indeed have frequent contacts with Israeli officials," and transmitted that information to the CIA,

7

"at whose request the investigation had been undertaken," after which the CIA head "responded with a series of letters to Hoover urging that the FBI take additional steps, including wiretapping and surveillance of" the head of NUMEC, but Hoover refused. (*Id.*). The court finds this memorandum does not meet any of the *Morley* criteria for excepting operational files from exemption. It does not describe an investigation by an enumerated entity into the intelligence activities of the CIA.[3] "Serious efforts" by the National Security Council to discover any CIA involvement in the possible theft does not constitute an investigation by a named entity, nor does it implicate the CIA's conduct of intelligence activity. In fact, the memorandum appears to point to conduct suggesting the *FBI*'s reticence to investigate rather than the CIA's. Plaintiff again asks the court to draw a number of inferences and make a number of assumptions arising out of the materials he has submitted: that the memorandum suggests the President's interest, which suggests that the President "would have sought out a federal executive department responsible for the enforcement of the law" to investigate the CIA, and ultimately the matter would have landed at the Department of Justice, (Opposition at 21). Bbut it is not the court's role to make inference upon inference. Where it is not clear from the materials submitted that there was an investigation that meets the statutory language, the court will not require the CIA to search its operational files.

Finally, Plaintiff argues that a Government Accounting Office ("GAO") investigation meets the Act's criteria, but the court disagrees. Plaintiff submits a 1978 GAO investigation report titled "Nuclear Diversion in the U.S.? 13 Years of Contradiction and Confusion." (Compl. Ex. 11). The

---

[3] Plaintiff appears to misunderstand the Act's reference to a "Presidential directive," which appears in the statute as one of the types of law or statutes, investigation of a violation of which is the type that excepts material from the Act's exemption. The "Presidential directive" reference does not mean, as Plaintiff suggests, that where the President investigates an intelligence agency, the agency loses the operational files exemption. Plaintiff's argument that the memorandum implies "[t]he President's request to make a serious effort to discover" any CIA involvement "was a 'directive' under 50 U.S.C. § 3141(c)(3)" is a misreading of the statute. A "Presidential directive" is a type of law under the statute, not a type of investigation.

8

report indicates that it was initiated at the request of the chairman of the House Interstate and Foreign Commerce Committee Subcommittee on Energy and Power. (*Id.*). It describes its contents as a report on an "investigation to determine the extent and contents of intelligence and related nuclear safeguards information regarding a possible diversion of nuclear material from a U.S. facility and the extent to which this information was disseminated among those agencies having responsibilities in this area." (*Id.*). The introduction to the report also states that the GAO "plan[s] to distribute the report to certain other parties," including "the Chairman of the House Committee on Interior and Insular Affairs and the Chairman of the Subcommittee on Energy, Nuclear Proliferation and Federal Services, Senate Committee on Governmental Affairs," as well as "the House and Senate Select Intelligence Committees" and "the Federal agencies included in [the GAO's] review." (*Id.*). It is clear that the GAO report was prepared at the behest of the Chairman of the House Subcommittee on Energy and Power, and not any intelligence committee; the report therefore does not constitute the product of an investigation "by the congressional intelligence committees" or any other entity listed in section 3141.

In light of the foregoing, the court finds the CIA's search adequate, and its decision not to search operational NCS files pursuant to the Act appropriate.

    ii.  <u>Decennial Review</u>

The CIA Information Act also requires the CIA to review the exempted files at least every ten years to determine whether they can be removed from categories of exempted files, on the basis of "historical value or other public interest in the subject matter of the particular category of files or portions thereof." 50 U.S.C. § 3141(g)(2). Subsection (g) authorizes a complainant to seek review in a United States District Court of the CIA's failure to comply with the section, but that review is limited to the court's determining (1) whether the CIA has conducted the required review before the

expiration of the current ten-year period (with the first ten-year period terminating on October 15, 1994), and (2) whether the CIA considered the "public interest" criteria. *Id.* § 3141(g)(3).

Plaintiff claims that the CIA "has provided no evidence that the required decennial reviews have taken place." (Opp. at 30). The CIA replies that the files "were subject to decennial review in April 2015, April 2005, and March 1995 after announcement in the Federal Register." (Reply at 9). The CIA provides the Federal Register cites—80 Fed. Reg. 21,704 (Apr. 20, 2015); 69 Fed. Reg. 76,449 (Dec. 21, 2004); 59 Fed. Reg. 40,339 (Aug. 8, 1994)—to the CIA's solicitation of public comment regarding the historical value of, or other public interest in, the files, and the court finds the notices in the Federal Register constitute sufficient evidence that the required decennial reviews were completed. The agency's declaration also describes the general decennial review process. The Director of NCS, along with the Deputy Director of CIA for Science and Technology, and the Director of Support, in consultation with the Chief of the CIA History Staff, make recommendations to the Director of the CIA as to files or portions of files that should no longer be exempt, taking into account "considerations of the historical value or other public interest in the subject matter." (Wilson Decl. ¶ 32). The CIA is not required to demonstrate that it conducted an appropriate decennial review of the specific files that Plaintiff seeks, because the CIA is not required to search its operational files for records responsive to Plaintiff's request. The statute requires the agency only to demonstrate to the court that it has conducted the review and implemented the statutory criteria. It is the CIA's interpretation of whether the files are no longer exempt based on historical value or public interest that determines whether files are removed from exemption. The court is satisfied that the CIA has met its section 3141(g) obligations.

   iii. <u>Exemptions</u>

In evaluating the CIA's motion for summary judgment, the court must also determine whether its withholding pursuant to certain FOIA exemptions was appropriate. After the ISCAP

decision, the CIA withheld sixteen records in part and one in full, and claimed exemptions 1, 3, 6, 7(c), and 7(E), based on consultations with the Federal Bureau of Investigation, the Department of State, and the Department of Energy. The CIA submitted a *Vaughn* index detailing its withholding. (Wilson Decl. Ex. F). The FBI, State Department, and Department of Energy also submitted declarations justifying their withholding of certain portions of the records. (Hardy Decl.; Hackett Decl.; Stein Decl.). While Plaintiff claims generally that the CIA "appl[ied] overly broad interpretations of FOIA exemptions with near zero segregation to released and unreleased non-operational file material," (Opposition at 5), he makes no further argument about any specific withheld material. The court therefore conducts its own analysis of the propriety of the CIA's withholding. See *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 506 (D.C. Cir. 2016) ("A court must always engage in the analysis required by Rule 56 before acting on a motion for summary judgment.").

The CIA, FBI, and State Department all invoked FOIA exemption 1, which allows withholding of matters that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy," and "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The court takes a deferential approach toward national security exemptions. *See Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009). The CIA invoked exemption 1 pursuant to Executive Order 13526 as to portions of a number of records, including, among others:

- internal agency memoranda about briefings of Senator John Glenn, Congressman Mike McCormack, Representative Morris Udall, and others on the NUMEC case;

- an internal agency routing slip attaching three internal agency memoranda, titled "Nuclear Materials and Equipment Corporation," "Possible Diversion of Weapons Grade Nuclear Materials to Israel by Officials of the Nuclear Materials and Equipment Corporation (NUMEC)," and "The NUMEC Case;"

- a letter from the CIA director to Senator Daniel Inouye, responding to his request for information on the NUMEC case;

11

- an internal agency memorandum titled "Proposed Briefing of the FBI on NUMEC Related Nuclear Diversion Information;"

- a memorandum concerning discussion of the NUMEC case with House Energy Committee members.

(CIA *Vaughn* Index). The FBI justified its FOIA exemption 1 withholdings, pursuant to Executive Order 13526's classification criteria, in order to "protect from disclosure information that would reveal the actual intelligence sources and methods used by the FBI against specific targets of foreign counterintelligence investigations," and to protect information about "activities by the United States or foreign governments and agencies that if known, could seriously and demonstrably impair relations between the United States and a foreign government." (Hardy Decl. ¶¶ 17-19). The State Department invoked exemption 1 as to information from confidential "diplomatic exchanges" that "concerns sensitive aspects of U.S. foreign relations," release of which "has the potential to inject friction into, or cause damage to, a number of [U.S.] bilateral relationships with countries whose cooperation is important to U.S. national security." (Hackett Decl. ¶¶ 11-12).

The CIA, FBI, and Department of Energy invoked FOIA exemption 3, which allows withholding of information "specifically exempted from disclosure by statute" if the statute "leave[s] no discretion," "establishes particular criteria for withholding," and, if enacted after the date of the enactment of the OPEN FOIA Act of 2009, specifically cites to the text of exemption 3. 5 U.S.C. § 552(b)(3). The CIA named the National Security Act and CIA Act as the statutes specifically exempting disclosure, the FBI named the National Security Act, and the Department of Energy named the Atomic Energy Act. (CIA *Vaughn* index; Hardy Decl. ¶ 20; Stein Decl. ¶ 8). All three statutes are within the purview of FOIA exemption 3. *See Fitzgibbon v. CIA*, 911 F.2d 755, 761 (D.C. Cir. 1990) ("There is [] no doubt that [the National Security Act] is a proper exemption statute under exemption 3"); *Morley*, 508 F.3d at 1118; *Ctr. for Pub. Integrity v. U.S. Dep't of Energy*, No. 1:15-CV-01314, 2017 WL 176268, at *12 (D.D.C. Jan. 17, 2017) (granting summary

judgment to Department of Energy on FOIA exemption 3 withholding pursuant to Atomic Energy Act). The court finds that each agency has set forth information that sufficiently justifies its withholding in accordance with the three statutes.

The FBI also invoked FOIA exemptions 6 and 7(C), which protect against invasions of personal privacy, to withhold the "names and identifying information of FBI special agents ('SAs') who were responsible for conducting, supervising, and/or maintaining the investigative activities reflected in the documents responsive to plaintiff's FOIA request." (Hardy Decl. ¶ 30). Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 requires a court to "pursue two lines of inquiry," first determining whether the records at issues are personnel, medical, or similar files, and then determining whether their disclosure would "constitute a clearly unwarranted invasion of personal privacy," which requires balancing "the privacy interest that would be compromised by disclosure against any public interest in the requested information." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008). The Supreme Court has stated that the term "similar files" is to be construed broadly, and includes any "disclosure of information which applies to a particular individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982).

FOIA exemption (7)(C) applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § (b)(7)(C). Exemption 7(C), while broader than exemption 6, also requires the court to "balance the . . . privacy interest against the public interest in disclosure." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004). Once the court finds that "the privacy concerns addressed by exemption 7(C) are present," the requester must "establish a sufficient reason for the disclosure" in

13

order to obtain the records. *Id.* at 172. In order to establish sufficient reason, the requester must show, first, "that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and, second, that "the information is likely to advance that interest." *Id.* Plaintiff has not identified, nor is the court aware of, any public interest that would be served by disclosing the identities of the FBI special agents. FBI's invocation of FOIA exemptions 6 and 7(C) is therefore appropriate.

The FBI also invoked FOIA exemption 7(E), which permits withholding of law enforcement records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 522(b)(7)(E). The FBI withheld information pertaining to a "sensitive technique used by FBI agents to conduct criminal investigations." (Hardy Decl. ¶ 33). The court finds the FBI has justified its FOIA exemption 7(E) withholding.

The court finds the CIA has met its obligations under FOIA, conducting an adequate search and releasing all reasonably segregable portions of responsive records, and will therefore grant the CIA's motion for summary judgment.

### B. Motion to amend

Plaintiff requests permission to amend his complaint and add the Department of Justice as a defendant. He does so in hopes of obtaining proof from the DOJ that it conducted an investigation into the CIA, which Plaintiff believes will then entitle him to a CIA search of its operational files. (*See* Mot. to Amend at 3 ("the Plaintiff as [sic] a right to review the Department of Justice's own actual final investigative report and all related files on the matter in support of his arguments")). Plaintiff proffers his February 16, 2011 FOIA request to the Department of Justice, in which he requested "a copy of the Criminal Division's information pertaining to allegations of cover-ups by

governmental agencies of the NUMEC case," and "any final report by this task force, including relevant investigation files, correspondence, interview transcripts and other cross referenced information." (*Id.* Ex. 16, ECF No. 19-2). The Criminal Division confirmed Plaintiff's request on February 25, 2011, and informed him that it had re-routed the request to the FBI and the National Security Division. (*Id.* Ex. 17). On September 27, 2011, the National Security Division informed Plaintiff that it had searched the Counterespionage Sections records and had not located any responsive records. (*Id.* Ex. 20). Plaintiff appealed several days later. (*Id*. Ex. 21). Plaintiff's appeal was denied almost one year later by the Office of Information Policy, which explained that the National Security Division had conducted a second search and had still not found any responsive records. (*Id*. Ex. 23).

Plaintiff filed this lawsuit in 2015. If he believed the Department of Justice was an appropriate defendant based on its response to his 2011 FOIA request in 2012, he had the opportunity to name the agency when he brought this case in 2015. He invokes Federal Rule of Civil Procedure Rule 15(a), which states the court "court should freely give leave [to amend a pleading] when justice so requires," Rule 15(c), which provides for relation back of amendments, and Rule 15(d), which allows the court to "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. Proc. 15. Plaintiff argues that the CIA's release of documents to him constitutes an "event" within the meaning of Rule 15 that entitles him to amend his pleading. (Mot. to Amend at 4). Plaintiff also invokes Federal Rule of Civil Procedure 21, which allows the court to, "at any time, on just terms, add or drop a party" in order to avoid dismissal based on misjoinder of parties. Fed. R. Civ. Proc. 21. Plaintiff claims that "the Department of Justice should expect challenges, given the current shadow cast by its own previous investigation over the present action,"

and that amendment is appropriate because his complaint against the Department of Justice involves the same subject matter as this case. (Mot. to Amend at 5-6).

The court does not find it in the interest of justice to allow Plaintiff to amend his Complaint at this stage in the litigation and add the Department of Justice as a defendant. This litigation had been ongoing for almost a full year when Plaintiff asked to name an additional party. The CIA had already moved for summary judgment. The CIA's motion for summary judgment is not an "event that happened after the date of the pleading," nor does Plaintiff's motion to amend constitute a "supplemental pleading" within the meaning of Rule 15. In deciding whether to allow amendment, a court can consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court finds under these circumstances that Plaintiff's delay and the prejudice to the opposing party weigh against allowing amendment.

Rule 20 allows joinder of a defendant where "any right to relief is asserted against [defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and where "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. Proc. 20(a)(2)(A)-(B). The court finds that the relief asserted against the Department of Justice does not arise out of the same transaction as that against the CIA, and that even if the Department of Justice would have been an appropriate defendant earlier in the litigation, joinder at this stage would result in undue prejudice to the CIA. Plaintiff submitted two separate FOIA requests, seeking different information, to the two separate agencies, and does not assert relief against them jointly based on any collaboration in responding to his requests. His request to the DOJ sought information about a DOJ investigation into government agencies including the CIA, and his request to the CIA sought information about

uranium diversion at NUMEC.  That his FOIA requests were related to the same general topic does not make the two agencies jointly or alternatively liable.  Moreover, allowing Plaintiff to amend would prejudice the CIA, which is entitled to resolution of this case.  As the CIA points out, Plaintiff has been aware since September 2010 that the CIA intended to rely on section 3141's exemption from searching operational files, yet Plaintiff seems to suggest that amending his Complaint is warranted based on the CIA's invocation of section 3141.  Because Plaintiff has not explained his delay in seeking amendment of his complaint until after Defendant moved for summary judgment, and because the amendment would prejudice the CIA, his request to add the Department of Justice as a defendant does not meet the standards of Rule 15 or Rule 20, and his motion will be denied.[4]

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be GRANTED and Plaintiff's Motion to Amend his Complaint will be DENIED.

A corresponding order will issue separately.

Dated: March 31, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[4] Plaintiff filed what is in essence a reply in support of his motion to amend, (ECF No. 22), claiming to bring "new information about [the] case to the court's attention." (ECF No. 22 at 1).  Plaintiff states "a reporter form the *Pittsburgh Post-Gazette* whom the Plaintiff knows" informed him that the Department of Justice is "secretly negotiating" a toxic clean-up deal for a for a former NUMEC site. (*Id*. at 3).  Plaintiff believes the Department's reticence to provide the information he seeks is related to this clean-up effort. (*Id.*).  He also stated that "based on an interview with a former high Department of Justice official with direct knowledge of the investigation, the Plaintiff discovered that the U.S. Department of Justice did indeed investigate the CIA over the NUMEC affair." (*Id.* at 4).  The court does not find Plaintiff's "new information" merits an amendment of the Complaint.  Plaintiff still does not meet the Rule 15 or Rule 20 standards for joinder and amendment, and the court is additionally unable to credit Plaintiff's sources in the absence of any sort of sworn declaration or affidavit from them directly.